# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

DONALD LEE ULMER,

       Petitioner,

:

Case No. 1:11-cv-354

:

District Judge Michael R. Barrett
Magistrate Judge Michael R. Merz

  -vs-

JOHN COLEMAN, Warden, Allen Correctional Institution,

:

       Respondent.

## REPORT AND RECOMMENDATIONS

This is an action for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted in the Scioto County Common Pleas Court of possession of drugs, trafficking in drugs, and tampering with evidence (Petition, Doc. No. 1, ¶ 5, PageID 1.)  He was sentenced to fifteen years imprisonment which he is presently serving in Respondent's custody.  *Id.* at ¶ 3.  He pleads the following grounds for relief:

> **Ground One**:  Seizing a suspect by using a deadly weapon when the sole basis for the seizure is reasonable suspicion to believe the suspect engaged in drug trafficking is a violation of the Fourth Amendment to the United States Constitution.
>
> **Supporting Facts**:  Petitioner was sitting in a motor vehicle when the police approached him based on the tip of an untried informant that he was trafficking in drugs. The approaching officers pointed a gun at Petitioner's head, blocked his car, forced Petitioner from his vehicle, handcuffed, and unreasoanbly [sic] seized him.
>
> **Ground Two:**  The seizure of a citizen seated in a parked car by pointing a firearm and blocking the suspect's egress by a police car

> is the functional equivalent of an arrest, requiring the presence of probable cause in order to be reasonable under the Fourth Amendment of the United States Constitution .
>
> **Supporting Facts:**  Petitioner was seated in a parked car when he was approached by law enforcement officers. One police officer pointed a gun at Petitioner's head. Another police officer blocked in Petitioner's car with a police vehicle.  Petitioner was then forcible [sic] removed from his vehicle, placed in handcuffs, and detained. This actions [sic] constituted an arrest, not a Terry Stop, and required the showing of probable cause in order to be reasonable under the Fourth Amendment of the United States Constitution.
>
> **Ground Three:**  Petitioner's federal due process rights were violated when the trial court and the state court of appeals used the inappropriate legal standard when deciding petitioner's pre-trial motion to suppress evidence.
>
> **Supporting Facts:**   In deciding Petitioner's pre-trial motion to suppress, both the trial court and the state court of appeals used the inappropriate standard in deciding his case. The state courts determined that the arresting officers possessed "reasonable articulable suspicion" in denying Petitioner's motion to suppress. However, the appropriate standard which should have been used was "probable cause" as Petitioner was arrested. The arresting officer's conduct exceeded the scope permitted by a Terry stop. By using the inappropriate legal standard to the prejudice of Petitioner, Petitioner was denied his federal due process rights.

*Id.*  PageID 6-8.

Respondent asserts that merit review of Petitioner's claims is barred by the doctrine of *Stone v. Powell,* 428 U.S. 465 (1976).  In that case the Supreme Court held that federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts.

*Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does.  The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism.

Habeas relief is allowed if an unanticipated and unforeseeable application of procedural rule prevents state court consideration of merits. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id.* at 526.

In his Response to the Return of Writ, Petitioner recognizes the applicability of *Stone v. Powell*, but asserts "he never received a 'full and fair' hearing on this matter in the state court." (Response, Doc. No. 9, PageID 474.) He claims *Stone* will not bar consideration of Fourth Amendment claims "where the state court willfully refused to apply the correct and controlling constitutional standards. Deference to state court consideration of Fourth Amendment claims does not require federal blindness to a state court's willful refusal to apply the appropriate constitutional standard," *Id., citing Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir. 1978); and *Gates v. Henderson,* 568 F.2d 830, 840 (2nd Cir. 1977). In addition, he relies on *Riley v. Gray, supra*, for the proposition that a habeas court can act "when the state court commits an "egregious error" in the application of Fourth Amendment principles." *Id.* at PageID 475. In particular, he asserts that because his car's movement was blocked by police and he was removed from the car at gunpoint, forced to the

ground, and handcuffed, that his detention amounted to an arrest, requiring probable cause, rather than an investigative stop which is measured by the standard of *Terry v. Ohio*, 392 U.S. 1 (1968). In sum, Petitioner asserts that he did not have a full and fair opportunity to litigate his claim because the trial court and court of appeals applied the wrong constitutional standard.

The relevant facts as found by the Scioto County Court of Appeals are as follows:

> [*P2] On November 4, 2008, Investigators Timberlake and Bryant, of the Portsmouth Police Department, received information from a confidential informant, who had pending criminal charges against her, advising them that she had been receiving oxycontin from a black male from the Detroit area known as "Lee" and that she could arrange for him to make a delivery to her. The investigators had not worked with this particular confidential informant in the past; however, they arranged for the confidential informant to place a recorded phone call to Lee, in their presence, in order to set up the delivery. The officers then took the recording back to the police department where they downloaded and listened to it.
>
> [*P3] The confidential informant further informed the officers that Lee would be driving either a gray Dodge Magnum or a gray Dodge Charger and would be arriving in Portsmouth via routes 32 and 23. Later in the day, after having more contact with Lee, the confidential informant contacted the officers and advised that Lee would be arriving in Portsmouth around 7:45 p.m. that evening. At that point, Investigator Bryant went to Lucasville, Ohio to conduct surveillance, where he eventually observed a vehicle matching the description given, heading south on route 23 towards Portsmouth. The confidential informant contacted the officers again and informed that she was to meet Lee at the Wurster's Pharmacy parking lot in Portsmouth.
>
> [*P4] As Appellant was approaching the designated meeting spot, the officers received another call from the confidential informant stating she was following Appellant's vehicle. Investigator Timberlake then observed Appellant park on a street just south of the designated meeting place, followed by the confidential informant. When the confidential informant exited her vehicle and entered Appellant's vehicle, which was unplanned, Investigator Timberlake placed a call to Investigator Bryant, who turned his lights on to bypass traffic and pulled in to block Appellant's parked vehicle. Investigator

> Timberlake, meanwhile, was approaching on foot. As Investigator Timberlake approached, through the open car window he overheard Appellant threaten and curse the confidential informant, accusing her of setting him up. At that point, Investigator Timberlake became concerned for the safety of the informant and approached Appellant's side of the vehicle with his weapon drawn and pointed towards Appellant. He then opened the car door and removed Appellant from the vehicle.
>
> [*P5] After removing Appellant from the vehicle, the officers noted a strong smell of marijuana. When Investigator Bryant removed the confidential informant from the vehicle, he was able to view a "blunt," or marijuana cigarette in the console ash tray. Officers were also able to view a pair of scissors and baggie in the vehicle. Upon making these findings, the officers conducted a further search of the vehicle, which resulted in the recovery of over 1000 oxycontin tablets.

*State v. Ulmer,* No. 09CA3283, 2010 Ohio App. LEXIS 579 at **2-4 (Ohio App. 4th Dist. Feb. 12, 2010).

Having discussed the applicable law at length, including many relevant United States Supreme Court precedents, the court of appeals concluded:

> [*P30] Consequently, we disagree with Appellant that the officers were required to have probable cause to remove him from his vehicle. As set forth above, based upon the informant's tip and the officers' corroboration of that tip, the officers' initial investigatory stop of Appellant was based upon reasonable suspicion. Once Appellant was removed from the vehicle and the smell of marijuana was apparent, accompanied with drug paraphernalia in the vehicle, which was in plain view of the officers, the officers certainly had probable cause to further search the vehicle. As such, we overrule Appellant's second assignment of error and affirm the trial court's denial of Appellant's motion for suppression.

*Id.* Nothing in the twenty-four page opinion of the court of appeals suggests in any way that, as Petitioner claims, it "willfully" applied the wrong law. As the court of appeals noted, a *Terry* stop includes a seizure which must be judged by Fourth Amendment standards, but can include "a

-5-

threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be compelled, approaching the citizen in a nonpublic place, and blocking the citizen's path." *Id.* at ¶ 19, *citing United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The facts Petitioner relies on here – presence of several officers, cruiser blocking egress, unholstered firearm when approaching the car, removal from the car – are all within facts which *Mendenhall* says are not inconsistent with a *Terry* stop.

 Moreover, it is important to distinguish between the various stage of this stop. The police had a tip from an untried informant who was herself facing charges. But they did not make the stop on that basis. Instead, they had her place a verified telephone call to place an order for drugs, they had her describe the car she expected the Petitioner to be driving, they observed that car arrive by the route Petitioner had told her he would be arriving, then she identified the car and Petitioner by following it and parking behind it.

 Once Officer Timberlake heard Petitioner accuse the informant of setting him up, as the trial court credited him with hearing, the situation changed importantly. The informant was not supposed to get into Petitioner's car; that part of the stop was unplanned. Once she did and the accusation was heard, the exigent circumstances made it reasonable for her safety to remove Petitioner from the car, forcibly if necessary.[1]

 In *Gamble v. Oklahoma*, 583 F.3d 1161 (10th Cir. 1978), relied on by Petitioner, the court did hold that *Stone's* "full and fair opportunity" included, *inter alia*, "recognition and at least

---

[1] Incidentally, Petitioner's loud cursing accusation of the informant added to the reasonable articulable suspicion that he was in Portsmouth to do precisely what the informant had said he would be there to do – sell her drugs.

colorable application of the correct Fourth Amendment constitutional standards." *Id.* at 1165. The *Gamble* court also believed federal courts have authority to grant habeas relief in a case where the correct federal standard was applied, "but in a manner so unconscionable as to deny a defendant the opportunity for full and Fair Litigation," *Id., citing Gates v. Henderson,* 568 F.2d 830, (2nd Cir. 1977), also relied on by Petitioner. In *Riley v. Gray, supra*, however, the Sixth Circuit declined to follow *Gamble*, holding:

> We believe that a limited inquiry into the correctness of state court decisions, occurring as a matter of course in the district courts, would be inconsistent with *Stone. Id.* at 493 n.35, 96 S. Ct. at 3052 n.35. The language of *Gamble*, however, entails an examination of each state decision which precipitates a habeas petition. This case by case review is inconsistent with *Stone*'s assumption that state courts are as capable of deciding fourth amendment issues as federal courts. When a petitioner alleges egregious error in the application of fourth amendment principles, of a magnitude and nature similar to the state court error present in *Gamble*, however, a federal habeas court might be justified in concluding that an opportunity for a full and fair hearing had not been afforded the petitioner.

*Riley v. Gray,* 674 F.2d at 526.

Even assuming *arguendo* that *Gamble* could be applied here, the Magistrate Judge finds no willful or egregious error in application of Fourth Amendment jurisprudence by the Scioto County Court of Appeals. *Stone v. Powell* therefore precludes this Court's considering any of Petitioner's claims on the merits. As Respondent points out, the Third Ground for Relief is really a Fourth Amendment claim repackaged as a Due Process claim, and *Stone* cannot be evaded in that manner.

It is accordingly respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied any requested certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would not be taken in objective good faith and should not proceed *in forma pauperis*.

March 22, 2012.

s/ **Michael R. Merz**<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).