UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Donald Lee Ulmer,

    Petitioner,

v.

Warden, Allen Correctional Institution,

    Respondent.

Case No.: 1:11-cv-354

Barrett, J.
Merz, M.J.

## OPINION & ORDER

This matter is before the Court on Magistrate Judge Michael R. Merz's March 23, 2012 Report and Recommendation ("Report") (Doc. 11). The Report recommends that all claims of Donald Lee Ulmer ("Petitioner") be dismissed with prejudice, that he be denied a Certificate of Appealability, and that the Court certify that any appeal would not be taken in good faith and that Petitioner should not be permitted to proceed *in forma pauperis*. (Doc. 11, p. 7). The parties were given proper notice pursuant to Fed. R. Civ. P. 72(b), including notice that the parties may waive further appeal if they fail to file objections in a timely manner. (Doc. 11, p. 8); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Petitioner has timely filed objections to the Report. (Doc. 12). This matter is now ripe for review.

**I.    BACKGROUND**

The relevant facts as outlined by the Scioto County Court of Appeals are as follows:

> {¶ 2} On November 4, 2008, Investigators Timberlake and Bryant, of the Portsmouth Police Department, received information from a confidential informant, who had pending criminal charges against

1

her, advising them that she had been receiving oxycontin from a black male from the Detroit area known as "Lee" and that she could arrange for him to make a delivery to her. The investigators had not worked with this particular confidential informant in the past; however, they arranged for the confidential informant to place a recorded phone call to Lee, in their presence, in order to set up the delivery. The officers then took the recording back to the police department where they downloaded and listened to it.

{¶ 3} The confidential informant further informed the officers that Lee would be driving either a gray Dodge Magnum or a gray Dodge Charger and would be arriving in Portsmouth via routes 32 and 23. Later in the day, after having more contact with Lee, the confidential informant contacted the officers and advised that Lee would be arriving in Portsmouth around 7:45 p.m. that evening. At that point, Investigator Bryant went to Lucasville, Ohio to conduct surveillance, where he eventually observed a vehicle matching the description given, heading south on route 23 towards Portsmouth. The confidential informant contacted the officers again and informed that she was to meet Lee at the Wurster's Pharmacy parking lot in Portsmouth.

{¶ 4} As Appellant was approaching the designated meeting spot, the officers received another call from the confidential informant stating she was following Appellant's vehicle. Investigator Timberlake then observed Appellant park on a street just south of the designated meeting place, followed by the confidential informant. When the confidential informant exited her vehicle and entered Appellant's vehicle, which was unplanned, Investigator Timberlake placed a call to Investigator Bryant, who turned his lights on to bypass traffic and pulled in to block Appellant's parked vehicle. Investigator Timberlake, meanwhile, was approaching on foot. As Investigator Timberlake approached, through the open car window he overheard Appellant threaten and curse the confidential informant, accusing her of setting him up. At that point, Investigator Timberlake became concerned for the safety of the informant and approached Appellant's side of the vehicle with his weapon drawn and pointed towards Appellant. He then opened the car door and removed Appellant from the vehicle.

{¶ 5} After removing Appellant from the vehicle, the officers noted a strong smell of marijuana. When Investigator Bryant removed the confidential informant from the vehicle, he was able to view a "blunt," or marijuana cigarette in the console ash tray. Officers were also able to view a pair of scissors and baggie in the vehicle. Upon making these findings, the officers conducted a further search of

2

> the vehicle, which resulted in the recovery of over 1000 oxycontin tablets.
>
> {¶ 6} The Scioto County Grand Jury returned a ten count indictment . . . .
>
> {¶ 7} Appellant entered pleas of not guilty to each charge and subsequently filed a motion to suppress. In his motion to suppress, he sought to suppress the physical evidence seized as a result of the warrantless search. On January 23, 2009, the trial court held a suppression hearing. At the hearing, Investigators Timberlake and Bryant testified to the previously set forth series of events. The State argued that the officers' initial stop of Appellant was based upon their reasonable articulable suspicion of criminal activity, based upon the informant's tip. The State further argued that once Appellant was removed from the vehicle and the officers were able to smell marijuana and view of a blunt in plain view, they possessed probable cause to search the vehicle. The trial court agreed and overruled the motion to suppress.
>
> {¶ 8} On January 26, 2009, Appellant changed his former pleas of not guilty to each charge in the ten count indictment and instead entered pleas of no contest to three of the counts, including possession of drugs, trafficking in drugs and tampering with evidence. The trial court sentenced Appellant to serve ten years for the possession of drugs conviction, five years on the trafficking in drugs conviction, to be served consecutively to the ten year sentence, and five years on the tampering with evidence conviction, to be served concurrently to the other sentences, for a total term of fifteen years. . . .

*State v. Ulmer*, No. 09CA3283, 2010 Ohio App. LEXIS 579, at *2-4 (Ohio App. 4th Dist. Feb. 12, 2010).

Petitioner appealed the denial of his motion to suppress the oxycontin to the Scioto County Court of Appeals, arguing that the trial court's findings of fact were against the manifest weight of the evidence and that the trial court failed to apply the appropriate test or correct law to the findings of fact. *See id.* at *1. The court of appeals affirmed the trial court's decision. *Id.* at *2. Discretionary appeal was denied by the Supreme Court Ohio. *State v. Ulmer*, 125 Ohio St.3d 1450, 927 N.E.2d 1129 (2010).

3

On June 2, 2011, Petitioner filed a Petition for a Writ of Habeas Corpus seeking relief on three separate Fourth Amendment grounds. (Doc. 1).[1] After reviewing the Petition, the Magistrate Judge recommended dismissal of the Petition in its entirety. (Doc. 11).

## II. ANALYSIS

### A. Standard of Review

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.; see also* 28 U.S.C. § 636(b)(1).

### B. Petitioner's Objections

Petitioner objects to the Magistrate Judge's Report on two grounds. (Doc. 12). For the reasons discussed below, this Court overrules both objections and adopts the recommendations set forth in the Report.

#### 1. First Objection

Petitioner argues that *Stone v. Powell*, 428 U.S. 465 (1976), does not preclude federal habeas review of his Fourth Amendment claims because he never received a "full and fair" hearing in the state courts. (Doc. 12, p. 2). Petitioner, however, has recognized the applicability of *Stone* and has conceded that the state courts provided

---

[1] As the Magistrate Judge found, the third ground for relief is a Fourth Amendment claim repackaged as a Due Process claim. (Doc. 11, p. 7). Petitioner did not object to that characterization of the third ground for relief (*see* Doc. 12), and in any event, the Court finds it to be an accurate characterization. As such, all of Petitioner's grounds for relief are reviewed under Fourth Amendment jurisprudence.

4

him with an "apparent hearing" for his Fourth Amendment claims and that he "ostensibly had the procedural opportunity to make a Fourth Amendment challenge in the state court."  (Doc. 9, p. 2).  However, Petitioner argues that the state court of appeals made a willful and egregious error in the application of Fourth Amendment jurisprudence that deprived him of a "full and fair hearing" under *Stone*, which entitles him to a review of his claims on the merits.  (Doc. 12, p. 6).  This Court disagrees.

*Stone* holds that when a state court provides an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at the prisoner's trial.  428 U.S. at 494.  Expounding upon the meaning of "opportunity for full and fair litigation," the Sixth Circuit set forth a two prong inquiry in *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982).  First, the district court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim.  *Id.* at 526.  Second, the court must determine whether presentation of the claim was indeed frustrated because of a failure of that mechanism.  *Id.*

This Court agrees with the Magistrate Judge that Ohio provides adequate procedural mechanisms, in the abstract, to present a Fourth Amendment claim.  As evidence that Ohio's procedures are adequate, the court in *Riley* recognized that Ohio R. Crim. P. 12 allowed a petitioner to file a pretrial motion to suppress and that an unsuccessful petitioner could then take a direct appeal of an order denying the motion to suppress.  *See Riley*, 674 F.2d at 526.  Notably in this case, Petitioner utilized a pretrial motion to suppress and subsequently appealed the order denying his motion.

Next, the Court must determine whether presentation of the claims was frustrated because of a failure of Ohio's adequate procedural mechanisms.  Although Petitioner argues that the procedures frustrated his claim because the wrong constitutional standard was applied, the inquiry of *Stone*, as explained in *Riley*, does not instruct courts to consider whether the proper constitutional standard was applied.  *Riley*, 674 F.2d at 526.  Such an inquiry would be inconsistent with *Stone's* assumption that state courts are as capable of deciding Fourth Amendment issues as federal courts.  *Id.* Rather, the inquiry is limited to determining whether the state court's procedural mechanisms frustrated the claim from being fully litigated.  *See id.* at 526-27.

In this case, Petitioner has failed to show that Ohio's procedural mechanisms frustrated him from presenting his Fourth Amendment claims, as he concedes that he was given the procedural opportunity to fully litigate those claims.  The state courts carefully considered and rejected Petitioner's probable cause argument at the trial level and on appeal, finding that only reasonable suspicion was required at the initial stop, and that officers acquired probable cause to search the vehicle once Petitioner was removed from the vehicle.  Petitioner successfully availed himself of the procedural mechanisms of Ohio, despite failing to persuade the courts that probable cause was required at the initial stop of Petitioner.  Since the failure to persuade a court is not an exception recognized by *Stone* or its progeny that would allow a district court to review the Fourth Amendment claim on the merits, Petitioner's objection is overruled.

However, even assuming *arguendo* that *Gamble v. Oklahoma*, 583 F.2d 1161 (10th Cir. 1978), a case upon which Petitioner relies (Doc. 12, p. 6), is applicable here, the Magistrate Judge was correct in concluding that there was no willful or egregious

6

error in the application of Fourth Amendment jurisprudence by the Scioto County Court of Appeals. The *Gamble* court found that to have a full and fair hearing, there should be "recognition and at least colorable application of the correct Fourth Amendment constitutional standards" and "[t]hus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully [sic] refuses to apply the correct and controlling constitutional standards." *Gamble*, 583 F.2d at 1165. In *Gamble*, the state court error that permitted habeas corpus review occurred when the state appellate court failed to apply or even reference a recent Supreme Court decision almost directly on point that had rejected the same rationale that the court relied on in its one-page order affirming the trial court's admission of illegally seized evidence. *Id.* Here, unlike in *Gamble*, the state appellate court recognized and analyzed the facts under the applicable Fourth Amendment standards as required by *Gamble*. *See Ulmer*, 2010 Ohio App. LEXIS 579, at *14-17. As the Magistrate Judge noted, the state appellate court "discussed the applicable law at length, including many relevant United States Supreme Court precedents" before reaching its conclusion. (Doc. 11, p. 5); *see also Ulmer*, 2010 Ohio App. LEXIS 579, at *14-17.

  It was not plainly at odds with Fourth Amendment jurisprudence for the state appellate court to conclude that the investigating officers needed only reasonable suspicion when they initially stopped Petitioner because the stop was, at first, purely investigatory. *See Terry v. Ohio*, 392 U.S. 1 (1968). Although Petitioner relies on facts such as the presence of several officers, a cruiser blocking his egress, an unholstered firearm on an officer when approaching the car, and his removal from his vehicle, in

7

support of his argument that the officers had to have probable cause at that stage, those facts are not inconsistent with a *Terry* stop for which reasonable suspicion is required. As the Magistrate Judge correctly stated (Doc. 11, p. 6), a *Terry* stop may be found where there is "a threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be compelled, approaching the citizen in a nonpublic place, and blocking the citizen's path." *United States v. Mendenhall*, 466 U.S. 554 (1980)); *see also United States v. Hardnett*, 804 F.2d 353, 355-58 (6th Cir. 1986) (finding that officers blocking defendant's car, approaching the car with guns drawn, and ordering the defendant and other occupants out at gunpoint was permissible under *Terry* and did not constitute an arrest in light of the surrounding circumstances). It also is notable that at the time, the investigators in this case were dealing with a suspected drug dealer, a type of criminal activity known to be associated with weapons and violence. The investigators had evidence of a known informant placing a recorded phone conversation to "Lee" setting up the drug delivery. The informant had correctly described the vehicle Petitioner would be driving and correctly identified the time and location that Petitioner would be meeting for the deal. The informant actually got into the vehicle of Petitioner, and the investigating officer heard Petitioner threaten and curse the informant for setting him up. Petitioner was in his vehicle and could have sped off from Investigator Timberlake approaching on foot if Investigator Bryant had not blocked his path. Finally, when the informant went into the vehicle of Petitioner and Petitioner realized that this was a set-up, the informant was in potential danger. Therefore, based on each of the above reasons, the Court agrees

with the Magistrate Judge that there was no willful or egregious error by the state appellate court in determining that the standard to be applied to the particular set of events at issue was reasonable suspicion for an initial stop, rather than probable cause for an arrest.

Accordingly, Petitioner's first objection is overruled.

### 2. Second Objection

Petitioner's second objection is based on the Magistrate Judge's recommendation that a certificate of appealability be denied. (*See* Doc. 11, p. 7; Doc. 12, pp. 6-7). Petitioner's sole basis for objecting is that he, unlike the Magistrate Judge, believes that reasonable jurists would find it debatable whether his claims should be resolved in a different manner such that a certificate of appealability is warranted. (Doc. 12, pp. 6-7).

Despite Plaintiff's objection being general and conclusory, this Court has reviewed it *de novo* and agrees with the Magistrate Judge that a certificate of appealability should not issue.

To obtain a certificate of appealability when a petition is denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, 77 L. Ed. 2d 1090, 103 S. Ct. 3383 (1983)). If the district court dismisses a habeas petition on procedural grounds without reaching constitutional

questions, the petitioner must show that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484. Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. *Id.* In such a circumstance, no appeal would be warranted. *Id.*

As discussed above, the Petition contains claims that are not cognizable in a federal habeas corpus case. Nothing in the Petition, the reply, or the objections reveals a circumstance sufficient to show that Petitioner has raised a substantial constitutional question and the materials likewise fail to show that reasonable jurists would disagree with the conclusion that the Petition raises non-cognizable claims. Accordingly, a certificate of appealability should not issue in this case, and Petitioner's second objection is overruled.

## III. CONCLUSION

Having reviewed this matter *de novo* under Fed. R. Civ. P. 72, the Court hereby **OVERRULES** Petitioner's Objections (Doc. 12) and **ADOPTS** the Report (Doc. 11) to the extent that its conclusions are not inconsistent with this opinion. This matter shall be **CLOSED and TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

                                        s/ Michael R. Barrett
                                        Michael R. Barrett, Judge
                                        United States District Court